# EXHIBIT A



# FLIGHT SOLUTIONS PROGRAM
# TERM SHEET

| VISTAJET US INC., having its principal offices at 110 Greene Street, New York, NY 10012. ("VistaJet US")" | Guilherme Cipriani, of 855 Timber LN Boulder CO 80304, United States ("Member") |
|---|---|

The terms set out below shall be interpreted by reference to the accompanying Program Fundamentals (Schedule A), Service Area Rules (Schedule B) and Miscellaneous Provisions (Schedule C) which together form the basis on which VistaJet US shall provide Member with flight services and additional services (the "**Program**").

"**Program Aircraft**" refers collectively to the Aircraft and Interchange Aircraft.

"North America Flights" are flights wholly within the North America Region of the Service Area.

"International Flights "are flights with one or more points outside the North America Region of the Service Area.

| Start Date: | 16 December 2015 | |
|---|---|---|
| Aircraft: | BOMBARDIER GLOBAL | |
| Service Area: | NORTH AMERICA REGION<br><br>EUROPEAN REGION<br><br>MIDDLE EAST REGION<br><br>ASIA PACIFIC REGION | a) The Aircraft shall be available to Member in the Service Area at the applicable Hourly Rates set out below.<br>b) Flights outside the Service Area are subject to special rules.<br>See Schedule B for full details of the rules applicable to each Region of the Service Area. |
| Allocated Hours: | 250 | Flight Hours per Year utilizing the Aircraft. |
| Hourly Rate | $15,950 | The base cost of each occupied Flight Hour that Member utilizes the Aircraft for North America Flights during the Term. |
| | $18,645 | The base cost of each occupied Flight Hour that Member utilizes the Aircraft for International Flights during the Term.<br><br>For flights/legs to and/or from a Remote Holiday Destination during Peak Periods, see special rules at Section 5 of Schedule B |
| Ferry Flight Hourly Rate: | $10,368 | The base cost of each unoccupied Flight Hour utilizing the Aircraft during the Term.<br>See Schedule A, Section 10.3(a) |
| Quarterly Payment: | $ 996,875 | See Schedule A, Section 10.1 |
| Security Deposit: | $ 996,875 | See Schedule A, Section 10.1 |
| Term: | 36 | months, commencing on the Start Date |
| Minimum Booking Notice: | 24 hours | For North America Flights |
| | 48 hours | For the North America Region (except for North America Flights), the European Region, the Middle East Region, and the Asia Pacific Region.<br><br>See Schedule A, Section 4 and Schedule B for details of available aircraft. |

| | | Interchange Aircraft Table - see section 8.2 of Schedule A | |
|---|---|---|---|
| Interchange Aircraft: | CL350 | CL604/5 | CL850 |
| Interchange Aircraft Rate for North America Flights: | 0.77 | N/A | N/A |
| Interchange Aircraft Rate for International Flights: | 0.79 | 0.88 | 0.94 |

**Special Terms:**

1. In the event of conflict or inconsistency between these Special Terms and any other terms set out elsewhere in this Program, these Special Terms shall take precedence.

\* VistaJet US is not a direct or indirect air carrier and acts solely as Member's agent to arrange air transportation operated by a duly licensed air carrier.

2. Notwithstanding Section 6.1 of Schedule A, Member may request a delay of up to 150 minutes from the scheduled time of departure (an "Extended Delay"), provided: (i) Member provides VistaJet US with at least 60 minutes notice of the Extended Delay prior to the original scheduled departure time; and (ii) the Extended Delay does not cause VistaJet US and/or the Carrier to incur any additional costs; and/or (iii) the Extended Delay does not cause a delay to the scheduled departure time of another VistaJet US customer; and/or (iv) the Extended Delay does not cause the Carrier to be obliged to provide any additional crew to Member and/or other VistaJet customer(s) in order to perform a scheduled flight.

3. Subject to (1) Member having purchased a Global 6000 aircraft from (a) VistaJet US, (b) a VistaJet Group Company or (c) another company owned wholly by VistaJet US's founder, Mr. Thomas Flohr, prior to the 16 June 2017 (the "Early Exit Date"), such Global 6000 aircraft being purchased by Member at fair market value and (2) Member providing at least 6 calendar months' prior written notice of their intention to terminate the Program at the Early Exit Date to the registered office of VistaJet US by courier ("Early Exit Notice"), and (3) Member not being in default, as at the date on which the Early Exit Notice is delivered to VistaJet US's registered office, of any of its obligations to VistaJet US under this Program or under any other agreement between the Member and VistaJet US or a VistaJet group company. Upon receipt of a valid Early Exit Notice (i) Section 2.2 and Section 2.3 of Schedule A shall cease to apply and (ii) should Member exceed the pro rated Annual Available Hours to be used in the second Year of the Term, the Supplemental Hourly Rate shall apply to each Flight Hour flown by Member in excess of such pro rated Annual Available Hours.

4. Member shall, prior to the Early Exit Date remain liable to pay to VistaJet US any charges, costs or fees arising pursuant to the terms of this Program and VistaJet US shall have the right to deduct the same from any credit balance held. Where VistaJet US does not have sufficient credit balance to extinguish Member's liability to VistaJet US, VistaJet US shall have the right to offset any sums payable against the Security Deposit and/or where necessary seek further payment from Member.

5. Following termination of this Program under Special Term 3, at the end of the third month following the Early Exit Date, VistaJet US less the cost of (a) the pro rated Annual Available Hours to be used in the second Year of the Term or (b) the actual Flight Hours used by Member, whichever is greater.

**IN WITNESS WHEREOF,** the parties hereto have executed this Program consisting of this Term Sheet, the Program Fundamentals, the Service Area Rules and the Miscellaneous Provisions on the dates set out below.

MEMBER:

By: _____
[Signature of Officer]

Name: Guilherme Cipriani

Position: _____

Date: 7 November 2015

VISTAJET US:

By: _____
[Signature of Officer]

Name: THOMAS FLOHR

Position: CHAIRMAN

Date: 6 NOV 2015

* VistaJet US is not a direct or indirect air carrier and acts solely as Member's agent to arrange air transportation operated by a duly licensed air carrier.

Program Partnership Agreement 2015 v.1.0

# SCHEDULE A
# PROGRAM FUNDAMENTALS

These Program Fundamentals (Schedule A) set out the key operational terms that govern the way the Program shall operate for Member's benefit and should be read in conjunction with the Flight Solutions Program Term Sheet, Service Area Rules (Schedule B), Miscellaneous Provisions (Schedule C) and the Conditions of Carriage ("GTCC") of the operating air carrier ("Carrier"), all of which together form the "**Program**".

## 1. BASIC TENETS

1.1 VistaJet US is not a direct or indirect air carrier. Air transportation under this Program will be operated by one or more licensed Carriers.

1.2 Member appoints and authorizes VistaJet US to act as agent for Member to arrange and pay for air transportation services ("Flight Services") operated by one or more licensed Carriers on Member's behalf. Member hereby designates, constitutes and appoints VistaJet US as its true and lawful attorney-in-fact, for the purposes of arranging Flight Services pursuant to one or more air transportation agreements, each a "Flight Services Agreement" (or similarly named document). VistaJet US may exercise this power of attorney to sign Member's name on any documents necessary to obtain such Flight Services on behalf of Member, and Member declares that any act lawfully done hereunder by VistaJet US on behalf of Member shall be effective, valid and binding on Member as if the same had been signed, sealed and delivered or done by Member. VistaJet US's appointment as Member's attorney-in-fact, and all of VistaJet US's rights and powers hereunder, shall be deemed coupled with an interest, are irrevocable and shall remain in effect until VistaJet US's obligation to arrange for Flight Services has terminated.

1.3 Subject to Member complying with the terms of this Program, VistaJet US shall arrange and pay for services on behalf of Member under this Program from the Start Date for the duration of the Term or until terminated in accordance with the provisions of this Program. Subject to the terms of this Program, specific Program Aircraft shall be primarily made available to Member.

1.4 Where more than one person and/or legal entity is designated as Member pursuant to this Program then each person and/or legal entity shall all have joint and several liability to VistaJet US under this Program.

1.5 Aircraft availability shall always be subject to the Carrier being able to obtain appropriate permits and permissions, including but not limited to customs and immigration permits, no operational restrictions, available take-off and landing slots, and any other requirements for the requested flight ("Permits and Permissions"), as well as appropriate insurance coverage, and compliance of Member and its guests with applicable laws, rules and requirements, including immigration, customs, agriculture, currency and health regulations and sanctions applicable at each destination.  In particular, certain countries (including within the Service Area) restrict or prohibit the domestic carriage of passengers; VistaJet US will notify Member of such restrictions and prohibitions as soon as possible following the Member requesting a flight booking and otherwise upon request. VistaJet US reserves the right to refuse arrangement of Flight Services if the entry and exit requirements for the country of departure or destination are not met, or if the required documentation/certification is not presented, without being liable for any damages due to such refused arrangement of Flight Services. Member and its guests shall be jointly and severally liable for any damages resulting from any incorrect or incomplete information provided to VistaJet US and/or the Carrier or from the delayed or improper provision of such information.

1.6 Member shall provide VistaJet US no later than 24 hours or by the date set by VistaJet US prior to departure with a complete guest list, passport copies including applicable visa and all other necessary information and valid documentation and any other operational requirements for the requested Flight Services.

## 2. ANNUAL AVAILABLE HOURS

2.1 Member commits to the Allocated Hours in each "**Year**" of the Term being defined as a period of 12 months calculated from the Start Date and thereafter each successive 12 month period calculated by reference to each successive anniversary of the Start Date.

2.2 Notwithstanding paragraph 2.1, where Member at the end of a Year of the Term has not utilized its Allocated Hours for that Year, VistaJet US shall automatically roll over a maximum of 20% of the Allocated Hours to the next Year of the Term (except in the last Year of the Term) which shall be added to Member's Allocated Hours in that Year ("**Roll Over Hours**").

2.3. In the event that Member exceeds its Allocated Hours during any Year of the Term, for the remainder of that Year the Supplemental Hourly Rate shall be applicable to each occupied Flight Hour or part thereof in excess of the Annual Available Hours. The Supplemental Hourly Rate is the Hourly Rate plus a premium of 15% thereon.  VistaJet US shall however automatically bring forward an equivalent number of hours to avoid the application of the Supplemental Hourly Rate in that Year up to a maximum of 20% of next Year's Allocated Hours ("**Roll Forward Hours**"). Member's Allocated Hours for the next Year of the Term will however be reduced accordingly.

2.4 Member's Allocated Hours adjusted by reference to Roll Over Hours and Roll Forward Hours shall be defined as Member's "**Annual Available Hours**".

## 3. CALCULATION OF FLIGHT TIME

3.1 Flight time shall be calculated based on actual time, wheels up to wheels down rounded up to the nearest $1/10^{\text{th}}$ of an hour, subject to Section 3.2 below. 2/10th of an hour shall then be added in total for the taxi time for each "leg" of a trip which is defined as a single flight involving one take off and landing. Each flight hour of use by Member is defined to be one "**Flight Hour**" and, once used, shall reduce Member's remaining available Annual Available Hours by one hour.

3.2 Each leg of a trip shall be deemed to have a minimum duration of one (1) Flight Hour for the Challenger CL350 and CL605, 1.3 Flight Hours for Challenger CL850 and 2.8 Flight Hours for Global, prior to the addition of taxi time, except for any flight(s) flown in a single calendar day during which Member's total use of the Program Aircraft equals at least four (4) Flight Hours for Challenger and seven (7) Flight Hours for Global.

## 4. MINIMUM BOOKING NOTICE

4.1 Member shall give VistaJet US at least 48 hours' notice prior to the anticipated time of departure for flights with any leg originating within the Service Area, except for North America Flights for which Member shall give VistaJet US at least 24 hours' notice prior to the anticipated time of departure, unless any other special restrictions apply as set out in this Program.

4.2 Member shall give VistaJet US at least 168 hours' notice prior to the anticipated time of departure for flights with any leg departing on a "Peak Day" for the Region from which that leg is departing. A list of current Peak Days for each Region of the Service Area is available on the VistaJet US website (www.vistajet.com/us/) and will be updated annually on or after January 1 and

Member's Initials: _____   VistaJet US Initials: _____

Program Partnership Agreement 2015 v.1.0

communicated to the Member annually prior to that date. VistaJet US reserves the right to change Member's scheduled departure time on a Peak Day by up to 3 hours before or after the requested departure time.
4.3 All requests for flights originating or terminating outside the Service Area are subject to aircraft availability and VistaJet US's prior approval.

## 5. INTENTIONALLY BLANK

## 6. DELAYS AND CANCELLATIONS

6.1 Member may request a departure delay of up to a maximum of 60 minutes beyond any confirmed departure time. If Member delays a flight in excess of 60 minutes beyond the confirmed departure time for any reason that is not the fault of VistaJet US or the Carrier, the flight shall be deemed to be cancelled and Member shall be required to reschedule the flight in accordance with the Minimum Booking Notice requirements set out in Section 4.
6.2 If a scheduled flight due to depart from an airport within the Service Area is cancelled by Member in excess of the applicable Minimum Booking Notice there shall be no charge to Member. Notwithstanding this, where a scheduled flight due to depart from an airport within the Service Area is cancelled by Member (or deemed cancelled by VistaJet US due to the fault of Member or its guests) with less than the applicable Minimum Booking Notice, VistaJet US shall not charge Member unless the Carrier has pre-positioned an aircraft specifically for such flight. Where such charges arise, Member shall be charged for all crew and aircraft pre-positioning expenses incurred by the Carrier up to an amount not exceeding the estimated cost of the cancelled flight.
6.3 If a scheduled flight due to depart from an airport outside the Service Area is cancelled (or deemed cancelled) by VistaJet due to the fault of Member or its passengers) notwithstanding any prior notice of such cancellation that may have been given by Member, Member shall be charged for all crew and Aircraft Category pre-positioning expenses incurred by the Carrier. Further, if the aircraft is positioned outside the Service Area and Member cancels the flight (or is deemed by VistaJet US to have cancelled the flight), VistaJet US shall be entitled to charge the repositioning costs of returning the aircraft to the nearest international airport within the Service Area (excluding Remote Holiday Destinations). In such circumstances, VistaJet US will be entitled to charge an amount not in excess of the estimated cost of any cancelled flight.
6.4 VistaJet US reserves the right to pass on all cancellation fees to Member imposed by a Carrier where Member requests VistaJet US to arrange a charter flight in accordance with Section 6 of Schedule B.
6.5 In all cancellation circumstances set out in this Section 6, Member's Annual Available Hours shall be reduced by the Flight Hours required to pre-position and reposition the Aircraft, multiplied by a ferry flight discount of 65%. Where an Interchange Aircraft is utilized, those Flight Hours amount shall be further multiplied by the applicable Interchange Aircraft Rate.

## 7. SIMULTANEOUS AIRCRAFT USAGE

Members having an Allocated Hours commitment of 400 Flight Hours or more per Year shall be entitled to simultaneous use of more than one Program Aircraft any one time. Guaranteed availability of two or more Program Aircraft shall at all times be subject to Minimum Booking Notice requirements.

## 8. USE OF INTERCHANGE AIRCRAFT

8.1 Member may utilize an Interchange Aircraft instead of the Aircraft, subject to availability and Carrier obtaining applicable Permits and Permissions.
8.2 Where the Member uses an Interchange Aircraft, the number of Flight Hours to be deducted from Member's Annual Available Hours utilizing an Interchange Aircraft shall equal the number of actual Flight Hours utilizing the Interchange Aircraft multiplied by the applicable Interchange Aircraft Rate ("**Adjusted Interchange Hours**").
8.3 VistaJet US reserves the right to amend, add or remove additional aircraft makes and models and associated rates to the Interchange Aircraft Table after giving 30 days prior written notice.
8.4 For International Flights, a Challenger 850 Interchange Aircraft may be substituted for the Aircraft, at VistaJet US's option and sole discretion, where the flight duration of any trip utilizing the Aircraft consists of, in the reasonable opinion of VistaJet US and/or the Carrier, one or more legs with an expected wheels-up to wheels-down flight duration of two hours and 45 minutes or less. In such circumstances, Member's Flight Hours for a trip shall be adjusted as if Member had requested a Bombardier Challenger 850 Interchange Aircraft.

## 9. USE OF ALTERNATIVE AIRCRAFT

9.1 Member acknowledges that use of the Aircraft may not be available at all times. In such event, Member shall be provided, at VistaJet US's option and sole discretion, with the use of another aircraft of the same class or better which aircraft shall be either an Interchange Aircraft, or a Non-Program Aircraft (individually and collectively "**Alternative Aircraft**").
9.2 Alternative Aircraft shall be provided on the same terms, and subject to same obligations, as the Aircraft and shall be supplied in accordance with the terms of this Program.
9.3 Any Alternative Aircraft used by Member will be treated as the Aircraft for the purposes of this Program during all periods of such use and Member's Allocated Hours shall be reduced by such usage as if the Alternative Aircraft was Member's contractual Aircraft. For the avoidance of doubt, the provisions of Section 1(iv) and Section 6 of Schedule B shall not apply when Non-Program Aircraft are provided as Alternative Aircraft under this section.

## 10. PRICE

10.1 Member shall pay the Security Deposit and the first Quarterly Payment to VistaJet US in cleared funds at least 3 working days prior to the Start Date. Thereafter Member shall pay to VistaJet US the Quarterly Payment at three month intervals for the remainder of the Term calculated by reference to the Start Date except where Member's billed and unbilled costs, fees and charges due pursuant to this Program leaves (or would leave) Member with a Credit Balance of $60,000 or less, in which case VistaJet US shall be entitled to require Member to pay the next Quarterly Payment prior to the next Quarterly Payment date. The "Credit Balance" is the amount held (in addition and separately to the Security Deposit) by VistaJet US from time to time during this Program and from which VistaJet US (i) deducts the cost of each Flight Hour (or part thereof) used by the Member, and (ii) settles fees and charges due under this Program. Member acknowledges that the provision of services under this Program shall always be subject to VistaJet US holding sufficient funds to cover the cost to Member of such services in advance and any other amount due under this Program on the due date.

Program Partnership Agreement 2015 v 1.0

10.2 In each Year of the Term Member shall be liable to pay to VistaJet US all Flight Hours or parts thereof flown by Member in that Year plus, where applicable, any unused Flight Hours or parts thereof that were not eligible for automatic Roll Over.

10.3 Member shall pay the following fees and charges, where applicable, in addition to the Security Deposit and Quarterly Payments on a monthly basis:

### (a) *Ferry Fees*

(i) VistaJet US shall not charge Member ferry flight usage charges for flights utilizing the Aircraft wholly within the Service Area.

(ii) All flights utilizing the Aircraft and originating and terminating outside the Service Area shall incur a ferry flight charge payable by Member pursuant to the Ferry Flight Hourly Rate and any applicable Fuel Surcharge for each Flight Hour required to ferry the Aircraft to and from such originating and terminating points to and from the nearest suitable international airports within the Service Area (excluding Remote Holiday Destinations, as defined in Section 5 of Schedule B) regardless of whether or not the Carrier actually ferries the Aircraft to and from those airports. Ferry Flight Hours shall reduce the Member's Annual Available Hours.

(iii) Subject to sub-section (iv) below, Challenger Interchange Aircraft and (x) originating and/or terminating outside the European, Middle East and Asia Pacific Regions of the Service Area, or (y) originating and/or terminating in a Remote Holiday Destination, shall incur a ferry flight charge payable by Member pursuant to the Ferry Flight Hourly Rate and any applicable Fuel Surcharge for each Flight Hour (multiplied by the applicable Interchange Aircraft Rate) required to ferry that Interchange Aircraft to and/or from such originating or terminating point or to and/or from the nearest suitable international airport within the Service Area (excluding the North America Region and Remote Holiday Destinations), regardless of whether or not the Carrier actually ferries that Interchange Aircraft to and/or from that part of the Service Area. Ferry Flight Hours (multiplied by the applicable Interchange Aircraft Rate) shall reduce the Member's Annual Available Hours.

(iv) All flights utilizing a Challenger 350 Interchange Aircraft originating and/or terminating outside the North America Region of the Service Area, shall incur a ferry flight charge payable by Member pursuant to the Ferry Flight Hourly Rate and any applicable Fuel Surcharge for each Flight Hour (multiplied by the Interchange Aircraft Rate if/as applicable) required to ferry that Interchange Aircraft to and/or from such originating or terminating point or to and/or from the nearest suitable international airport within the Service Area (excluding Remote Holiday Destinations), regardless of whether or not the Carrier actually ferries that Interchange Aircraft to and/or from that part of the Service Area. Ferry Flight Hours (multiplied by the applicable Interchange Aircraft Rate) shall reduce the Member's Annual Available Hours.

(v) For the avoidance of doubt, flights that originate and/or terminate outside of the Service Area shall at all times be subject to availability and provided to Member at VistaJet US's sole discretion.

(vi) Ferry flight charges shall not apply to any leg of a trip utilizing the Aircraft on an Extended Trip. An Extended Trip is a series of connected flights which originate and terminate within the Service Area but includes one or more legs with a destination outside the Service Area, with an average utilization of at least three (3) Flight Hours per day, calculated from the date and time of departure. For the purpose of calculating the number of days in an Extended Trip, VistaJet US shall calculate the number of hours elapsed from the original departure to the final destination and divide the number of hours by 24, rounding up any decimal.

### (b) *Fuel Surcharge*

(i) The fuel surcharge shall be calculated by reference to a base fuel price of 165.00 US cents per gallon ("**Base Fuel Price**") and shall be calculated by comparing the Base Fuel Price with the weekly jet fuel price in US cents / gallon as published by IATA (International Air Transport Association), available on IATA's website (www.iata.org) (which reflects the global average price paid at the refinery for aviation jet fuel supplied by Platts, a division of the McGraw Hill Companies) (the "**IATA Fuel Price**").

(ii) The following provisions apply to any calendar month of the Term where the average IATA Fuel Price of the prior calendar month has risen 5% or more above the Base Fuel Price of 165.00 US cents per gallon.

(iii) Each Flight Hour used in such calendar month shall be multiplied by (a) a Fuel Surcharge calculated as the difference between (i) the latest IATA Fuel Price as published by International Air Transport Association (www.iata.org) on the last working day of the prior calendar month and (ii) the Base Fuel Price, and then multiplied by (b) a fuel adjustment charge of $ 8.00 for Challengers and $ 11.00 for the Aircraft.

(iv) Where Member utilizes an Interchange Aircraft, the fuel surcharge will be calculated by reference to the Adjusted Interchange Hours of the Aircraft by utilizing the Interchange Table on the Term Sheet of the Program.

(v) Should IATA cease providing jet fuel pricing data or should Platts data become unavailable for any reason, VistaJet US shall be entitled to use an alternative provider of jet fuel price data. In this case, VistaJet US shall provide notice of any change as soon as reasonably possible.

### (c) *Third Party Taxes, Duties, Charges and Fees*

Member shall pay on demand (or reimburse VistaJet US, if paid by VistaJet US) any and all federal, state, local and foreign taxes, landing fees, permits, permissions, overfly charges, duties and excise taxes, and other similar assessments or charges, including associated interest and penalties relating to provision of the Program Aircraft and associated services, but excluding any tax imposed in any jurisdiction on VistaJet US's or the Carrier's net income, net profits or net gains.

### (d) *Additional and/or War Risk Insurance*

(i) Member shall pay the cost of additional insurance required by Member's specific request.

### (e) *Additional Services*

Member shall pay the cost plus a 10% service fee for any additional services or items provided by VistaJet US at Member's request including, but not limited to the use of in-flight satellite phones, on-board wi-fi (except for flights within the United States of America, excluding Alaska), special catering beyond the normal VIP catering package, ground transportation, car hire, and airport shuttles.

### (f) *Out of Service Area Charges*

If a flight touches a point (or is between points) outside the Service Area, Member shall pay all unscheduled charges incurred including, but not limited to, special Governmental charges at airports, landing permits and fees, head taxes, departure taxes, immigration, customs, handling charges, foreign fuel taxes and surcharges, overflight, navigation and airspace use fees, special

Program Partnership Agreement 2015 v.1.0

insurance costs (e.g., special war risk premium for certain countries), costs of observing air traffic control guidelines, entry fees, VAT, fees relating to landings for refuelling purposes and extra crew utilized for long itineraries.

### (g) High Density Airport Charges

Member shall pay any High Density Airport Fees for each landing at a High Density Airport. See Schedule B for current fees and locations, which may be updated from time to time by giving Member at least 30 days written notice.

### (h) Landing/Handling Charges in the Asia Pacific Region

Member shall pay the actual cost of all landing fees, handling fees and other fees associated with such a landing.

### (i) De-icing Fees

Member shall be liable to pay de-icing fees where applicable.

### 11. PAYMENT

11.1 All payments shall be made within 5 business days of invoice, without set-off or deduction. Time for payment shall be of the essence.
11.2 Late payments shall be subject to interest at 1% of the outstanding sum per month (but not to exceed the maximum rate permitted by law) from the date due until receipt by VistaJet US, and VistaJet US shall not be in breach of contract if it suspends the arrangement of Flight Services or additional services while VistaJet US does not hold sufficient funds to cover the cost of future flight bookings or while VistaJet US has not been paid a sum due pursuant to the terms of this Program. Additionally, VistaJet US shall charge to Member costs from lawyers and collection agencies incurred by asserting its rights under the Agreement in order to collect the amounts outstanding.
11.3 VistaJet US may offset any outstanding amounts due against the Security Deposit. In such case, Member shall, within 14 calendar days of demand by VistaJet US, pay the amount needed to restore the Security Deposit to its full amount.
11.4 Where this Program states different Hourly Rates for use of the Aircraft and for use of Interchange Aircraft or Alternative Aircraft, for the purpose of calculating the correct equivalent number of Flight Hours to be deducted from Member's Allocated Hours pursuant to Section 3.1 of Schedule A, VistaJet US shall divide the relevant Hourly Rate of such Interchange Aircraft or Alternative Aircraft (converted into the currency in which the Hourly Rate of the Member's Aircraft is expressed) by the Hourly Rate of the Aircraft and multiply the resulting amount by the Flight Hours (or parts thereof) flown in that leg. Where Member has more than one aircraft that together are defined as the Aircraft, VistaJet US shall determine the Flight Hours to be deducted from either and/or both Aircraft.
11.5 Member authorizes VistaJet US to release Member's funds to the respective Carrier for Flight Services provided by such Carrier in accordance with this Program and the Flight Services Agreement with the Carrier, so as to cover the cost of Flight Services charged by Carrier (the "Carrier Flight Cost"). The Member further authorizes VistaJet US to release Member's funds for the settlement of (a) any fuel surcharge charged by Carrier in respect of those Flight Services as set out in the Flight Services Agreement with the Carrier, (b) United States Federal Transportation Excise Taxes charged by Carrier in respect of those Flight Services (including domestic segment fee, international arrival/departure head tax and Hawaii flight tax), (c) any other taxes or governmental fees or charges incurred by the Carrier in connection with such Flight Services, and (d) the cost of any additional services or items provided to the Member at their request or as operationally required (for example, de-icing costs and in-flight internet connection charges) ((a) to (d) being, individually and collectively, the "Additional Flight Costs"). The Carrier Flight Cost shall be exclusive of the Additional Flight Costs. The Hourly Rate charged to Member under this Program is inclusive of a variable fee resulting from the difference between the Carrier Flight Cost and the charge by VistaJet US for Flight Services arranged for under this Program (the "Program Fee"). VistaJet US assumes the commercial risk to arrange for Flight Services within the terms of this Program and shall, on its invoices to Member, disclose the Carrier Flight Cost, the applicable Program Fee and the Additional Flight Costs. In the event that the Carrier Flight Cost exceeds the total cost that would be charged to Member pursuant to Section 10.1(i) of Schedule A, the Program terms shall prevail to Member's benefit.     *****

Program Partnership Agreement 2015 v.1.0

# SCHEDULE B
## SERVICE AREA RULES

### 1. North America Region

(i) The North America Region consists of:

The 48 contiguous States of the United States of America (i.e., excluding Alaska), Hawaii, Mexico and the principal airports in the Caribbean Islands that VistaJet US and/or the Carrier deems to be appropriate for take-off and landing ("the Caribbean").

(ii) Flights to and/or from Hawaii, Mexico and the Caribbean are subject to special Remote Holiday Destination rules at Section 5 of Schedule B.

(iii) The Global 5000 and the Challenger 350 are the Program Aircraft available to the Member for North America Flights, subject to the terms of this Program.

(iv) Member may request an aircraft type other than the Aircraft and the Challenger 350 Interchange Aircraft for flights wholly within the North America Region. VistaJet US reserves the right at its own discretion to arrange a charter with a Carrier on behalf of Member for the Carrier to operate a Non-Program Aircraft charter, and VistaJet US will provide Member with a Charter Quote based on the actual cost charged by the Carrier, plus a service fee of 10%. For the avoidance of doubt, the Hourly Rate and the Supplemental Hourly Rate shall not be applicable to a North America Flight Charter using a Non-Program Aircraft. The cost of a North America Flight Charter shall be settled by the Member by way of reduction of the Member's remaining available Annual Available Hours. Any such charges shall, prior to such reduction, be converted into Flight Hours (or part thereof) by dividing such charges by the Aircraft Hourly Rate and rounding the resulting sum up to the nearest 1/10th of a Flight Hour. All North America Flight Charters remain subject to any special conditions of the Carrier, which will take precedence over any terms to the contrary set out in this Program. Applicable terms for a North America Flight Charter will be set out in the Charter Quote. The Charter Quote will confirm the cost of the flight booking and will calculate the number of Flight Hours or parts thereof that shall be deducted from Member's Allocated Hours. No Charter Quote shall be deemed confirmed until Member has accepted the Charter Quote in writing. Member shall have 5 hours to accept any Charter Quote supplied by VistaJet US for a North America Flight Charter. Once a Charter Quote is accepted by Member in writing, VistaJet US reserves the right to pass on all cancellation fees to Member imposed by Carrier.

(v) High density airport fees apply at the following airports (each a "High Density Airport") in relation to each take-off and each landing with a Member or Member's guests in the following amounts for the following aircraft. Charges applicable to other aircraft types are available on demand.

| Airport Location | Challenger 350/605 | Challenger 850 & Global |
|---|---|---|

None as at the Start Date

### 2. European Region

(i) The European Region consists of:

Austria, Belgium, Bulgaria, Bosnia & Herzegovina, Croatia, Czech Republic, Cyprus, Denmark, Estonia - Tallinn only, Finland, France, Germany, Greece, Hungary, Israel, Italy, Latvia - Riga only, Lithuania - Vilnius only, Luxembourg, Ireland, Macedonia, Malta, Montenegro, Netherlands, Morocco – Casablanca and Marrakesh only, Norway, Poland, Portugal, Romania, Russia – Kaliningrad, St. Petersburg and Moscow only (but not flights between the cities due to local restrictions), Serbia, Slovakia, Spain, Sweden, Switzerland, Ukraine – Kiev only and the United Kingdom.

(ii) The Challenger 350, Challenger 604/5, Challenger 850 and the Global are the Program Aircraft that are available to Member within the European Region subject to the terms of this Program.

(iii) High density airport fees apply at the following airports (each a "High Density Airport") in relation to each take-off and each landing with a Member or Member's guests in the following amounts for the following aircraft. Charges applicable to other aircraft types are available on demand.

| Airport Location | Challenger | Global |
|---|---|---|
| Casablanca | € 1,100 | € 1,300 |
| Chambery/Aix-Les-Bains | € 700 | € 900 |
| Frankfurt | € 600 | € 600 |
| London/Heathrow | € 1,300 | € 1,700 |
| London/Luton | € 300 | € 300 |
| Marrakech | € 400 | € 400 |
| Milan/Malpensa | € 300 | € 300 |
| Moscow/Domodedovo | € 1,500 | € 1,800 |
| Moscow/Sheremetyevo | € 800 | € 900 |
| Moscow/Vnukovo | € 1,300 | € 1,500 |
| Paris/Charles de Gaulle | € 600 | € 600 |
| Samedan | € 3,000 | € 6,000 |
| St Petersburg/Pulkovo | € 800 | € 1,100 |
| Zurich | € 600 | € 800 |

### 3. Middle East Region

(i) The Middle East Region consists of the following countries:

Armenia, Azerbaijan, Bahrain, Egypt, Georgia, Jordan, Kuwait, Lebanon, The Maldives, Oman, Qatar, Saudi Arabia, Syria, Turkey, United Arab Emirates and Yemen.

(ii) The Challenger 350, Challenger 604/5, Challenger 850 and the Global are the Program Aircraft that are available to Member within the Middle East Region subject to the terms of this Program.

(iii) Flights to and/ or from the Maldives are subject to special Remote Holiday Destination rules at Section 5 of Schedule B.

(iv) High Density Airport Charges apply at the following airports (each a "High Density Airport") in relation to each take-off and each landing with a Member or Member's guests in the following amounts for the following aircraft. Charges applicable to other aircraft types are available on demand.

Member's Initials:                    VistaJet US Initials:

Program Partnership Agreement 2015 v.1.0

| Airport Location | Challenger | Global |
|---|---|---|
| | | |

None as at the Start Date

### 4. Asia Pacific Region

(i) The Asia Pacific Region consists of the following countries:
Brunei, Cambodia, China (including the Special Administrative Regions of Hong Kong and Macau), Indonesia, Japan, Laos, Malaysia, Myanmar, Philippines, Singapore, South Korea, Taiwan, Thailand and Vietnam.

(ii) The Challenger 350, Challenger 604/5, Challenger 850 and the Global are the Program Aircraft that are available to Member within the Asia Pacific Region subject to the terms of this Program.

(iii) Member is advised that flights within the Asia Pacific Region will be subject to landing/handling fees charged to Carrier for each take off and landing. See table below for an indication of fees applicable. Actual fees charged to Carrier by local airports will be charged to Member at cost.

| Airport Location | Challenger | Global |
|---|---|---|
| Shanghai | US$6,500 | US$6,500 |
| Beijing | US$9,000 | US$9,000 |
| Tianjin | US$6,500 | US$6,500 |
| Manila | US$4,000 | US$4,000 |
| Seletar | US$2,500 | US$2,500 |
| Bangkok | US$4,000 | US$4,000 |
| Phuket | US$4,000 | US$4,000 |
| Ho Chi Minh City | US$4,000 | US$4,000 |
| Hanoi | US$4,000 | US$4,000 |
| Danang | US$4,000 | US$4,000 |

Note:
The list of airports set out above is not a comprehensive list of the airports that the Carrier may fly to or from in the Asia Pacific Region but simply a list of the most popular airports used by Members. Please contact VistaJet US for specific advice on specific landing/handling charges for your choice of airport in the event that a fee estimate is not provided above.

(iv) High Density Airport Charges apply at the following airports (each a "High Density Airport") in relation to each take-off and each landing with a Member or Member's guests in the following amounts for the following aircraft. Charges applicable to other aircraft types are available on demand.

| Airport Location | Challenger | Global |
|---|---|---|
| | | |

None as at the Start Date

### 5. Remote Holiday Destinations

5.1 Hawaii, the Maldives, the Caribbean and Mexico shall each be regarded as a Remote Holiday Destination, pursuant to the Terms of this Program.

5.2 For flights to and/or from a Remote Holiday Destination during Peak Periods, as defined below, utilizing the Aircraft a premium of 10% shall be applied increasing the Flight Hours charged to Member by 10%. For the avoidance of doubt, where the Supplemental Hourly Rate is applicable a further 15% premium shall be applied by increasing the Flight Hours charged to Member by a further 15%.

5.3 For the purpose of this Program, Peak Periods are:

Thanksgiving Weekend (Wednesday - Monday inclusive)
The period starting on December 20 and ending on January 15
Easter Weekend (Good Friday – Easter Monday inclusive)
Orthodox Easter Weekend (Friday – Monday inclusive)

Peak Periods may be varied by VistaJet US during the term of this Program by giving not less than 30 days written notice to Member.

5.4 Member is advised that flights originating or terminating in a Remote Holiday Destination will be subject to landing/handling fees charged to Carrier for each take off and landing.

5.5 Notwithstanding Section 3.2 of Schedule A, each flight utilising the Aircraft that originates and/or terminates in a Remote Holiday Destination shall be deemed to have a minimum duration of two (2) Flight Hours.

### 6. Charter Quotations for Flights Outside the Service Area

6.1 Where Member requests a flight/leg originating and/or terminating outside the Service Area, the arrangement of such flights under this Program shall at all times be at VistaJet US's sole discretion. VistaJet US reserves the right at its own discretion to arrange a charter with a Carrier on behalf of Member, and will provide Member with a Charter Quote based on the actual cost to VistaJet US in obtaining a Non-Program Aircraft charter for Member plus a service fee of 10%. *For the avoidance of doubt, the Hourly Rate and the Supplemental Hourly Rate shall not be applicable to such flights.*

Member's Initials: _____    VistaJet US Initials: _____

Program Partnership Agreement 2015 v.1.0

6.2 VistaJet US will provide Member with a Charter Quote for each requested charter trip originating and/or terminating outside the Service Area for acceptance by Member.

6.3 The cost of all quoted charter legs shall be settled by the Member by way of reduction of the Member's remaining available Annual Available Hours. Any such charges shall, prior to such reduction, be converted into Flight Hours (or part thereof) by dividing such charges by the Aircraft Hourly Rate and rounding the resulting sum up to the nearest 1/10th of a Flight Hour.

6.4 All quoted charter legs remain subject to any special conditions of Carrier which will take precedence over any terms to the contrary set out in this Program. Applicable terms will be set out in any Charter Quote.

6.5 No Charter Quote shall be deemed confirmed until Member has accepted the Charter Quote in writing and Member shall have 5 hours to accept any Charter Quote supplied by VistaJet US for Flight Services originating and/or terminating outside the Service Area.

6.6 Any Charter Quote will confirm the cost of the flight booking and will calculate the number of Flight Hours or parts thereof that shall be deducted from Member's Allocated Hours.

6.7 VistaJet US reserves the right to pass on all cancellation fees to Member imposed by Carrier.

*****

Member's Initials: _____   VistaJet US Initials: _____

Program Partnership Agreement 2015 v.1.0

# SCHEDULE C
## MISCELLANEOUS PROVISIONS

### 1. NO PROPRIETARY RIGHTS

Member has no proprietary or exclusive rights in any aircraft utilized by Member pursuant to this Program.

### 2. RATES/RATES REVIEW

2.1 All rates set out in this Program are base rates and may, at VistaJet US' option by notice to Member, be adjusted on or after January 1 of each Year of the Term at the greater of (a) the rate of 2.5% or (b) the rate of increase of the G20 Consumer Price Index (as published by the OECD) for the month of October in the immediately preceding calendar year.

2.2 Where applicable, any conversion of any rate from (1) Euro to (2) US dollar (or any other currency) and/or vice versa shall be calculated on the basis of the respective midmarket rate to the US$ listed at www.oanda.com for the invoice date.

2.3 In the event that any of the rates are varied pursuant to the provisions of this Section 2, all calculations of sums payable to VistaJet US shall thereafter be calculated on the basis of the revised rates and not the base amount figures set out in the Program.

### 3. REFUND OF SECURITY DEPOSIT

3.1 At the expiry of the Term, VistaJet US shall promptly refund any credit balance held by VistaJet US less the cost of (a) the Annual Available Hours to be used in the last Year of the Term or (b) the actual Flight Hours used by Member, whichever is greater. VistaJet US will transfer funds to the account from which funds were originally transmitted from except for when Member provides written confirmation from its bankers that the account is no longer active.

3.2 Notwithstanding the provisions of Section 3.1 Member shall remain liable to pay to VistaJet US any other charges, costs or fees arising pursuant to the terms of this Program and VistaJet US shall have the right to deduct the same from any credit balance held. Where VistaJet US does not have sufficient credit balance to extinguish Member's liability to VistaJet US, VistaJet US shall have the right to offset any sums payable against the Security Deposit and/or where necessary seek further payment from the Member.

### 4. COVENANTS

4.1 Member shall use the Program, Non-Program and Alternative Aircraft only for its own pleasure or for business in the carriage of its officials, employees and guests, and shall not use the Program, Non-Program and Alternative Aircraft: (a) to provide transportation of passengers or cargo for remuneration; (b) in violation of Applicable Aviation Regulations and/or the insurance; or (c) for any illegal purpose.

4.2 Member shall not cause, permit or allow any mortgage, charge, pledge, lien, hypothecation, assignment, claim or any other encumbrances whatsoever to be placed against the Program Aircraft.

### 5. FORCE MAJEURE

VistaJet US shall notify Member of any event of Force Majeure as defined in the operating Carriers' GTCC that prevents VistaJet US from arranging Flight Services with the Program Aircraft for a period of ninety (90) calendar days or more, during which time the Member's obligations under this Program shall be suspended until the Force Majeure event no longer exists. If the Force Majeure event continues beyond ninety (90) days from notification of such event, Member may terminate this Program.

### 6. BREACH AND DEFAULT

6.1 The occurrence and continuation of any of the following shall constitute an "**Event of Default**" and contractual breach by Member:
(a) Insolvency, assignment for the benefit of its creditors, or bankruptcy, including any proceeding under any bankruptcy or other law for the relief of debtors that is not dismissed within 90 days; (b) Failure to pay proper amount due when due under this Program; or (c) Material breach by Member of any other provision of this Program, which breach continues for 30 calendar days after written notice, unless, within such 30 days, Member diligently commences a cure of such breach and completes said cure within 60 calendar days.

6.2 During an Event of Default, Member shall not be entitled to use of the Program Aircraft, and Member's Allocated Hours shall be reduced, as liquidated damages and not as a penalty, by an amount equal to one twelfth of the Year's Allocated Hours for each thirty-day period or part thereof that such default exists. Any such reduction of Allocated Hours shall be in addition to and not in lieu of VistaJet US's right to claim all sums which may be due hereunder and to pursue all other remedies available to it at law or in equity.

6.3 Upon the occurrence of an Event of Default by either party and failure by such party to cure such breach within any available grace period, the other party may immediately terminate this Program. Any such termination shall be in addition and not in lieu of the terminating party's right to bring an action or claim against the defaulting party for any other remedies otherwise available to it at law or in equity.

### 7. GENERAL

7.1 This Program sets out the entire agreement between the parties. No special terms, representations, assurances, promises or warranties shall be binding on VistaJet US except as set out expressly herein.

7.2 Any previous agreements (if any) made between the parties relating to this Program are hereby cancelled and superseded.

7.3 This Program does not create a joint venture, partnership, agency or other form of business relationship between the parties.

7.4 Any amendment to this Program must be in writing and signed by authorized representatives of both parties.

7.5 All representations, warranties and covenants herein will survive this Program unless otherwise provided herein.

7.6 If any provision(s) of this Program are held to be wholly or partly invalid, void, illegal or unenforceable ("**Invalid Provision**"), the remaining provisions of the Program will be unimpaired. The Invalid Provision will be deemed severable and will be replaced by a legally and mutually acceptable provision that reflects the parties' intentions.

7.7 VistaJet US may novate, assign, sub-contract and transfer this Agreement and all or any of its rights and obligations under it to (a) its holding company, (b) any subsidiary of its holding company (other than a subsidiary of its holding company that has been issued an Air Operator Certificate), and (c) any company purchasing the business and undertaking of VistaJet US. For the purposes of this Agreement, a company is a "subsidiary" of another company, its "holding company", if that other company (a) holds a majority of the voting rights in

Member's Initials: _____   VistaJet US Initials: _____

Program Partnership Agreement 2015 v.1.0

it, or (b) is a member of it and has the right to appoint or remove a majority of its board of directors, or (c) is a member of it and controls alone, pursuant to an agreement with other members, a majority of the voting rights in it, or if it is a subsidiary of a company that is itself a subsidiary of that other company. For the purposes of this Agreement "company" includes any body corporate. In the event of such novation, assignment, sub-contracting or transfer, (a) VistaJet US shall inform the Member thereof in writing within a reasonable time thereafter and (b) the Member will re-execute a fresh agreement for the unexpired Term of this Agreement with the novatee/assignee/sub-contractor/transferee, if VistaJet US requires the Member to do so. Member may not assign or otherwise transfer any of its rights or obligations under this Program without VistaJet US's prior written consent.

7.8 Each Party's rights and remedies under this Program are cumulative and not alternative and are not exclusive of each other.

7.9 This Program may be executed by ink or facsimile signature in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one agreement.

7.10 VistaJet US shall have the right to amend the terms of this Program to rectify any inconsistency or conflict or to correct errors in this Program subject to VistaJet US giving Member not less than 90 days prior written notice and such changes not materially changing the original terms.

7.11 All notices hereunder will be in writing, in English, and deemed to have been given on the date of dispatch if faxed (with transmittal confirmation), and 5 days after mailing if sent by registered mail (excluding Saturdays, Sundays, and public holidays), in each instance to the address specified on the first page of this Program.

## 8. LIABILITY AND INDEMNIFICATION

8.1 Member agrees and acknowledges that VistaJet US is only arranging for Flight Services on Member's behalf and VistaJet US shall have no liability to Member whatsoever, and VistaJet US hereby disclaims all liability, for the operation or performance of the Flight Services carried out by the Carrier(s) and/or for any actual direct, indirect, special or consequential damages caused directly or indirectly by any breach by Carrier of the Flight Services Agreement including, without limitation, any delay or failure of Carrier to provide the Program Aircraft, Non-Program Aircraft, or Alternative Aircraft, as the case may be, pursuant to this Program or the Flight Services Agreement. Member shall indemnify, defend and hold harmless VistaJet US, its officers, directors, shareholders, and employees (collectively "VistaJet US Indemnified Parties") from all liability, loss, damage, cost and expenses (including reasonable attorneys' fees) which such VistaJet US Indemnified Parties shall sustain or suffer arising out of any act or omission of Member, its agents, officers, directors or guests.

8.2 Neither party shall be liable to the other for any indirect, special or consequential damages including, but not limited to loss of profit and/or punitive damages of any kind or nature under any circumstances or for any reason including, but not limited to, losses suffered by Member as a result of any delay or failure by VistaJet US, its employees or agents, in arranging for operations with the Program Aircraft, Non-Program Aircraft, or Alternative Aircraft. Member shall not be entitled to assert any resposibility on the part of VistaJet US for any damages or losses relating to additional services arranged at Member's request unless such losses have been caused by VistaJet US's willful misconduct.

8.3 Member shall reimburse VistaJet US promptly on demand for the costs of repairing any damage (or extraordinary wear and tear) caused by Member (or Member's guests) to the Program Aircraft, Non-Program Aircraft, or Alternative Aircraft, or its interior.

8.3 Member shall not be entitled to assert any responsibility on the part of VistaJet US or any damages or losses relating to Additional Services arranged at Member's request unless such losses have been caused by VistaJet US's willful misconduct.

8.4 All warranties, conditions, representations whatsoever implied by statutory or common law are, to the fullest extent permitted by law, excluded from this Program.

## 9. LAW AND JURISDICTION

9.1 This Program and any dispute, controversy, proceedings or claim of whatever nature arising out of or in any way relating to this Program or its formation (including any non-contractual dispute or claim) shall be governed by and construed in accordance with the laws of the State of New York, excluding conflicts of laws or principles.

9.2 The parties agree that the federal and state courts of the State of New York shall have exclusive jurisdiction and venue to determine any dispute which arises in connection with this Program except that VistaJet US will retain the right to refer a dispute to any other court which has jurisdiction and in whose jurisdiction Member has a place of business or has a bank account or owns assets.

9.3 This Section 9 is without prejudice to the rules of jurisdiction of any applicable law (including the Warsaw Convention or the Montreal Convention) which may apply to the carriage of the Member and/or their guests.

Member's Initials:          VistaJet US Initials: